GUSTAF TENGBERG *vs.* TRIMOUNT OIL COMPANY.

Middlesex.    May 13, 1935. — September 13, 1935.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Negligence*, In use of inflammable material.

The evidence warranted findings that one delivering asphalt through a hose into an opening in a heating tank should have known that there then was also flowing through the hose a lighter oil which would vaporize in the heat in the tank and become inflammable upon mixture with air; and that in striking a match near the opening of the tank in such circumstances he was negligent toward one whose property was damaged by the resulting fire.

TORT. Writ in the First District Court of Eastern Middlesex dated May 1, 1930.

Upon removal to the Superior Court, the action was tried before *Macleod*, J. The verdict for the plaintiff was in the sum of $1,650.

*T. von Rosenvinge,* (*N. von Rosenvinge* with him,) for the plaintiff.

*M. C. Taylor,* for the defendant.

LUMMUS, J.  Upon the return of a verdict for the plaintiff for negligent injury to the plaintiff's automobile truck by fire, the judge reserved leave under G. L. (Ter. Ed.) c. 231, § 120, thereafter entered a verdict for the defendant, and reported the case.  The only question is, whether the evidence warranted the return of a verdict for the plaintiff.

The defendant was a dealer in asphalt, tar and oil products used in the building and maintenance of roads.  The plaintiff was an independent contractor engaged by the defendant to haul road patching material in his truck.  His truck was standing at the defendant's mixing plant to be loaded.

The mixing hopper was shaped like a half cylinder, with the curved side down, and through the axis ran a horizontal shaft with paddles thereon, the rotation of which mixed the ingredients.  Directly above the paddles ran a small horizontal pipe with openings in it, leading from a storage drum for fuel oil, mounted on brackets above.  By means of a valve the operator could permit fuel oil to flow by gravity from the drum into the hopper.  The drum was kept filled by pumps from a large fuel oil storage tank some distance away.

Above the hopper was a weighing bucket.  Above that, on one side, was a storage bin for dried sand and crushed stone, with a chute leading down into the weighing bucket.  On the opposite side was a large square metal tank of the capacity of thirteen hundred gallons, in which were heated steam coils for the heating of the heavy low-grade asphalt with which the tank was filled.  This tank had no connection with the fuel oil drum already described.

The process of mixing was to weigh out and dump into the hopper the requisite amounts of sand and stone, then run in the requisite amount of fuel oil, and operate the hopper until the sand and stone were coated with fuel oil.  Then the requisite amount of asphalt was measured and dumped in.  The hopper was operated until its contents were well mixed.  Then its contents, by means of a lever, could be dumped into a truck below.

At the time of the accident several hopper loads had been dumped into the plaintiff's truck, and it was waiting for more.  One Brasseau, an employee of the defendant,

was standing on top of the square tank, holding the hose through which asphalt was being pumped, from the defendant's tank truck below, into an opening two and one half feet square in the top of the tank. Brasseau struck a match on the seat of his trousers for the purpose of lighting a cigarette. There was a "flareup" from the opening in the top of the tank, and Brasseau was enveloped in flames. There was no explosion. Brasseau dropped the hose and jumped to the ground, where the plaintiff put out the fire in Brasseau's clothing. Before the plaintiff could get back to his truck, the fire, spreading from the woodwork around the tank and hopper, had injured it.

There was no evidence that there was any fire coming from the hose or the defendant's truck. The asphalt, which was supposed to be in the hose, the truck and the square tank, is very difficult to ignite. If nothing else had been there, expert testimony showed that a fire would have been impossible. But clearly there was a fire in the tank, on all the evidence, and there must have been inflammable material there. When Brasseau's clothes were taken off, a substance that a witness called "asphalt" had penetrated them; but expert testimony showed that asphalt, the low grade residuum after substantially all lighter oils had been extracted, would not have so penetrated, and would not have caught fire. The operator of the defendant's truck conceded that at the time of the accident the motor that operated the pump had speeded up, although it had been laboring before. The material coming out of the hose was so thin that it would run. The operator of the defendant's truck attributed the speeding up of the motor to the fact that the material left in the truck was running low, but the jury might have found that it was due to a change in density in the material being pumped. There was an odor like that of gasoline fumes around the square tank just before the accident, and on that day the mixing plant was running "hotter than usual." Expert testimony showed that asphalt has practically no odor. On the side of the defendant's truck was a thirty-gallon drum of kerosene oil, which was connected by a pipe line

and valve with the pump and hose. The kerosene oil was used at times to clean the pump and hose by being pumped through them. The operator of the defendant's truck testified that the kerosene oil was not being pumped at the time of the accident, but the credibility of this testimony was for the jury.

As to the source of the material being pumped, the only evidence was that it came from the defendant's twenty thousand gallon storage tank in Everett, and before that from tank cars of Standard Oil Company of New Jersey, the producer. No tests were made of the material being pumped, nor of that remaining in the truck, nor of that in the storage tank in Everett. But it was unlikely that the material bought of the Standard Oil Company of New Jersey contained anything but asphalt. If it had done so, the fact doubtless would have been discovered and there would have been evidence to that effect. The load in question was the second truck load that had been delivered from the storage tank in Everett. There was nothing to show that the first load contained anything but asphalt.

Expert testimony showed that there must have been present a light oil, like fuel oil or the still lighter kerosene oil, which was turned into vapor by the intense heat within the square tank, and became explosive or inflammable when mixed with the proper amount of air. Very likely, as an expert testified, the vapor would have been consumed in an instant when ignited, and would not have generated enough heat to ignite asphalt. But what was still flowing through the hose was apparently not asphalt, but a lighter and more inflammable oil. A finding was warranted that the defendant's servants who were present could have known, if they had been in the exercise of reasonable care, that such was the case, and that striking a match under the extraordinary circumstances existing was a source of danger. In our opinion there was evidence of negligence for the consideration of the jury.

> *Verdict entered by judge vacated.*
> *Verdict of jury as first returned to stand.*
> *Judgment for plaintiff on that verdict.*